**In re Elizabeth H. ARNETT, Debtor.**

**Magnolia Mortgage, LLC, Appellant,**

v.

**Elizabeth H. Arnett, Appellee.**

No. CIV.A. 01–0863–BH–S.
Bankruptcy No. 010–12431–WSS–13.

United States District Court,
S.D. Alabama,
Southern Division.

May 13, 2002.

There is equity above the first mortgage debt, but not enough to cover Magnolia's full debt. The modification confirmed by the Bankruptcy Court bifurcates Magnolia's claim into a secured claim of $47,000.00, which will be paid in full at 9.5% interest with a balloon payment, and an unsecured claim of $28,000.00, which will be paid 5% pro rata with the other unsecured creditors. .

## ISSUE

The sole issue in this case is whether 11 U.S.C. § 1322(c)(2) permits bifurcation of an undersecured mortgage on a Chapter 13 debtor's principle residence when the last payment on the original payment schedule is due before the final payment under the plan.[1]

Lawrence B. Voit, Mobile, AL, W. Alexander Gray, Jr., Silver, Voit & Thompson, PC, Mobile, AL, for appellant.

Irvin Grodsky, Mobile, AL, David S. Moyer, Irvin Grodsky, P.C., Mobile, AL, for appellee.

## ORDER

HAND, Senior District Judge. .

This case is an appeal from the Bankruptcy Court based upon the Bankruptcy Court's confirmation of a Chapter 13 plan. The Debtor's Chapter 13 plan that was confirmed by the Bankruptcy Court provided for a modification of the mortgage of Magnolia Mortgage Company, LLC ("Magnolia") pursuant to 11 U.S.C. § 1322(c). Magnolia's mortgage is a second mortgage on Debtor's homeplace.

## COURSE OF PROCEEDINGS

Elizabeth H. Arnett, the Debtor in this case, filed a petition under Chapter 13 of the Bankruptcy Code on May 11, 2001 (R1–1). With her petition, Arnett filed a Chapter 13 plan (R1–2), which provided, *inter alia,* for modification of Magnolia's claim. Magnolia filed an objection to the proposed plan (R1–15), and Arnett filed an amended plan on August 22, 2001 (R1–25) to which Magnolia also objected (R1–26).

The Bankruptcy Court held a hearing on the confirmation of Arnett's plan on August 29 and 30, 2001. On October 12, 2001, the Court conditionally confirmed the plan, conditioned upon Arnett filing a second amended Chapter 13 plan. (R1–36) The Bankruptcy Court made oral findings of fact and conclusions of law (RF–1–26).[2]

---

1. This issue is set forth as two separate issues by the appellant who challenges not only the Bankruptcy Court's conclusion that § 1322(c)(2) allows the bifurcation but the Court's actual confirmation of the Chapter 13 plan which then provides for such bifurcation.

2. The undisputed facts are set forth in the Court's findings of fact, given orally on October 11, 2001. Cites to the transcript are to

Arnett filed a second amended plan on October 12, 2001 (R1–39), which was confirmed by the Bankruptcy Court on November 6, 2001. Magnolia filed this appeal on November 15, 2001.

## STATEMENT OF FACTS

The facts in this case are undisputed. Arnett is the owner of real property located at 3520 Bayfront Road in Mobile, Alabama. (RF-pp.4–5) The property, comprised of two lots and a home, is Arnett's principal residence. (RF-p.5)[3]

Arnett's home has a fair market value of $125,000.[4] (RF-p.19) Provident Bank holds a first mortgage executed by Arnett in July 1999, with an approximate principal balance of $83,000. (RF-p.5) On December 9, 2000, Arnett gave Magnolia a promissory note for $75,000, secured by a second mortgage on her home. (RF-p. 5; RF–Ex. 1, 2) Magnolia's promissory note required monthly payments of $630.64 beginning January 1, 2001, with a balloon payment due on December 1, 2005, which is prior to the date on which the final payment is due to be paid under the plan. Interest accrued at the contract rate of 9.5% per annum.

Arnett made no payments on the Magnolia promissory note. (RF-p.5) Arnett was unemployed at the time the Magnolia mortgage was made and the loan application which she submitted on the same date the note and mortgage were executed showed that she had no income with which to make the first payment due on the note on January 1, 2001. (RF-p.8) There is evidence in the record to support the contention that this mortgage was in reality an accommodation mortgage for Greg Stewart, with whom the Debtor was both personally and professionally involved at the time. (RF-p.7–8). Of the $75,000.00 in mortgage proceeds, Arnett was paid $15,000.00 and Greg Stewart was paid $60,000.00. (RF-p.6)

■ Arnett's original Chapter 13 plan proposed to pay a substantially reduced monthly "preference" payment[5] to Magnolia based on a secured claim of $26,000. (R1–2) The remaining amount of Magnolia's debt would be paid as an unsecured claim, with Arnett paying 5% of all unsecured creditors' claims in monthly payments over a 5 year period (R1–2). Magnolia objected to this treatment on grounds that the bifurcation of its claim into a secured claim of $26,000 and an unsecured claim of approximately $50,000 was a modification of Magnolia's claim that violated § 1322(b)(2) of the Code. (R1–15)

---

the page of the transcript, or exhibit numbers, and are referred to as "RF-___".

3. Arnett's property has a legal description which includes two parcels. Arnett at one point argued that Magnolia's mortgage could be modified under § 1322(b)(2) because it was not secured "only by" the Debtor's principal residence. The Court, however, found and concluded that the two parcels were not separate and distinct from each other, and that Magnolia's claim was secured "only by" the Debtor's principal residence. *See* 11 U.S.C. §§ 1322(c)(2) and 1322(c)(2). (RFp.12) This issue is not presented in this appeal.

4. Magnolia presented an appraisal valuing the property at $131,000. (RFEx.11) The Debtor scheduled the value of the property at $110,000. The Court found that the fair market value of the property was $125,000. Magnolia does not dispute this finding.

5. In Chapter 13 cases, debtors may propose to pay specific monthly payments to secured creditors, which are paid through the Chapter 13 Trustee's office, but are paid before pro-rata distributions to general unsecured creditors. These are referred to as "preference" payments, and should not be confused with avoidable preferences which are dealt with under § 547 of the Code.

The bifurcation of Magnolia's claim was restated in Arnett's amended plan dated August 22, 2001. (R1–25) Magnolia again objected (R1–26). The Court held a confirmation hearing to consider approval of Debtor's proposed plan as amended.

With the balloon payment provision in Magnolia's note, it is undisputed that the last payment on the original payment schedule for Magnolia's claim is due before the date on which the final payment under Arnett's five year Chapter 13 plan, as amended, is due. Accordingly, Arnett argued, and the Bankruptcy Court concluded, that § 1322(c)(2) of the Code applied. Based on the Court's finding that the fair market value of the property was $125,000, and that there was an $83,000 first mortgage on the property, the Court concluded that under §§ 506(a), 1322(c)(2) and 1325(a)(5) of the Code, Magnolia's claim could be bifurcated into a secured claim in the amount of $47,000.00 and an unsecured claim of $28,000.00, with the secured claim being equal to the amount of equity in the property above the first mortgage debt.

Magnolia argued that § 1322(b)(2) prohibited such a modification, and that § 1322(c)(2) should not be construed to allow such a modification, relying on *In re Witt*, 113 F.3d 508 (4th Cir.1997). The Bankruptcy Court declined to follow the *Witt* case, and allowed the modification, following the Sixth Circuit Bankruptcy Appellate Panel decision in *In re Eubanks*, 219 B.R. 468 (6th Cir. BAP 1998) (RF–pp.15–17).

After concluding that § 1322(c)(2) permitted Arnett to bifurcate Magnolia's claim, the Court conditionally confirmed Debtor's Chapter 13 plan on the condition

that Arnett increase the amount of Magnolia's secured claim from $26,000 to $42,000 (the amount of equity in Arnett's home above the first mortgage debt), and that the plan provide for a preference payment to Magnolia consisting of monthly interest-only payments at the contract rate of interest until the date for the balloon payment under the original note, at which time the entire remaining principal amount would be required to be paid. (RFpp.16–20) Arnett filed a second amended plan containing the provisions required by the Court (R1–39), and the Court issued an order confirming Arnett's second amended plan. (R1–40)

This appeal followed, and Magnolia asks this Court to rule that § 1322(c)(2) does not permit such modification, that § 1322(b)(2) prohibits the modification of Magnolia's claim as approved by the Bankruptcy Court, and to reverse the order confirming the plan and remand the case for further proceedings.

## DISCUSSION

■■■■ The issue presented is solely a legal one. Consequently, this Court must make an independent determination of that issue, and there is no presumption of the correctness of the Bankruptcy Court's conclusion. *See In re Perine*, 46 B.R. 695, 696 (S.D.Ala.1983). The question is whether § 1322(c)(2), enacted as part of the Bankruptcy Reform Act of 1994, allows a Chapter 13 debtor to bifurcate and "cramdown" an undersecured home mortgage which is "short term", i.e., has already matured or has a last payment due before the last payment due under the debtor's plan.[6] Upon consideration of the

---

6. The statutory term for a Chapter 13 plan is three years, which may be extended to five years, "for cause." 11 U.S.C. § 1322(b). As a practical matter, almost all Chapter 13 plans are now proposed as 5–year plans, and

generally no specific showing of cause is required for a debtor to obtain a 5–year term. Accordingly, for the purposes of this discussion, a "short term" home mortgage would be one where the final payment has already

parties' respective arguments and the applicable law, the Court concludes that the Bankruptcy Court correctly applied the more reasoned opinion of *In re Eubanks*, 219 B.R. 468 (6th Cir. BAP 1998), and correctly rejected *In re Witt*, 113 F.3d 508 (4th Cir.1997).

Section 1322(c)(2) [7] was enacted as part of the Bankruptcy Reform Act of 1994 to provide a statutory exception to the protection from modification afforded most home mortgage lenders in Chapter 13 cases by 11 U.S.C. § 1322(b)(2) [8]. *Eubanks*, 219 B.R. at 470.

"Section 1322(c)(2) now creates an 'exception to the exception' for the subset of real property secured claims 'in a case in which the last payment of the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is now due.'" *Eubanks*, 219 B.R. at 470–71. "In other words, in 1994 Congress abrogated the protection of

home mortgages from modification in Chapter 13 cases to the extent, and with respect to, the real estate secured claims described in new § 1322(c)(2)." *Id.*

In contrast to the analysis of the Fourth Circuit in *Witt* which restricts the application of § 1322(c)(2) to "payments" under a plan, the Sixth Circuit more logically analyzes the plain language of this statute and concludes that the authorized modification "pursuant to § 1325(a)(5)" can only be interpreted as permitting the modification of the "claim" itself. The Sixth Circuit reasoned that " § 1322(c)(2) authorizes the Debtors' plan to provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title" [9] and:

> The "allowed secured claim" of which § 1325(a)(5) speaks is derived through valuation and "bifurcation" in accordance with § 506(a). As the Supreme Court explained, "Section 506 ... governs the definition and treatment of secured claims, ... [and] provides that a claim is secured only to the extent of the

---

come due or will become due within five years of the filing of the debtor's Chapter 13 petition.

7. Section 1322(c)(2) provides:
   Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
   . . . .
   (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, *the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.*
   (Emphasis added).

8. Section 1322(b)(2) states:
   (b) Subject to subsections (a) and (c) of this section, the plan may—
   . . . .
   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property

that is the debtor's principal residence, or holders of unsecured claims, or leave unaffected the rights of holders of any class of claims..."

9. Section 1325(a)(5) provides:
   (a) Except as provided in subsection (b), the court shall confirm a plan if—
   . . . .
   (5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   (C) the debtor surrenders the property securing such claim to such holder....

value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *[United States v.] Ron Pair,* 489 U.S. [235] at 238–39, 109 S.Ct. [1026] at 1029 [103 L.Ed.2d 290 (1989)] (footnotes omitted). The Supreme Court has recognized that undersecured claims are split by § 506(a) and then can be "crammed down" in a Chapter 13 case by § 1325(a)(5):

> Under the cramdown option [of § 1325(a)(5)(B)], the debtor is permitted to keep the property over the objection of the creditor, [provided] the creditor retains the lien securing the claim, [citation omitted], and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral, [citation omitted]. The value of the allowed secured claim is governed by § 506(a) of the Code.

*Associates Commercial Corp. v. Rash,* 520 U.S. 953, 955–59, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997). Accord *United States v. Arnold,* 878 F.2d 925, 928 (6th Cir.1989) ("Under this section [1325(a)(5)], the debtor can 'cramdown' a plan repaying 'only the allowed secured claim,' i.e., the amount of the debt to the extent it is secured by the present value of collateral taken by the creditor."); *[In re] Young,* 199 B.R. [643] at 647 [(Bankr.E.D.Tenn.1996)] ("The very essence of a § 1325(a)(5) modification is the write down or 'cramdown' of a secured claim to the value of the collateral securing the debt.").

*Eubanks,* 219 B.R. at 471. The Sixth Circuit concluded:

> Section 1322(c)(2) incorporates § 1325(a)(5) to define the new power to modify real estate secured claims within its reach. See *[In re] Bagne,* 219 B.R.

[272] at 277 [(Bankr.E.D.Cal.1998)]. The plain meaning of the phrase "provide for payment of the claim as modified pursuant to section 1325(a)(5)" includes that undersecured claims will be valued, bifurcated and crammed down consistent with well-settled interpretations of § 1325(a)(5).

*Id.* at 471–72.

This Court is also impressed with the Sixth Circuit's analysis and rejection of the *Witt* decision. *Id.* at 472–73 and 478–80. For the same reasons, this Court rejects *Witt* and adopts *Eubanks.*

## CONCLUSION AND ORDER

Section 1322(c) of the Bankruptcy Code creates a narrow exception to the anti-modification provisions relating to home mortgages. The exception provided for in 1322(c) is applicable to the second mortgage held by Magnolia in this case. The exception provided for in § 1322(c) includes the power to bifurcate or split undersecured claims consistent with § 1325(a)(5). Consequently, the Bankruptcy Court did not err in interpreting § 1322(c)(2) in this manner, and accordingly did not err in confirming Arnett's Chapter 13 plan, as amended, which included a bifurcated treatment of Magnolia's claim into both a secured and an unsecured claim. The Court concludes and it is therefore **ORDERED** that the confirmation order entered by the Bankruptcy Court in this case is due to be and is hereby **AFFIRMED**.