**In re Steven and Kimberly GRAMMER, Debtors.**

**No. 5:02–BK–14977.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

June 3, 2004.

Rosalind M. Mouser, Pine Bluff, AR, for DeWitt Bank and Trust Co.

Kyle W. Havner, Pine Bluff, AR, for debtors.

Jo–Ann Goldman, Little Rock, AR, chapter 13 trustee.

## OPINION

RICHARD TAYLOR, Bankruptcy Judge.

Pending before the Court is the Motion For Relief From Stay and Abandonment of Collateral filed by creditor DeWitt Bank and Trust Company [DeWitt Bank] on November 19, 2003, and the Response to Motion For Relief From Stay and Abandonment of Collateral filed by the debtors on December 2, 2003. The Court heard arguments in this matter on March 30, 2004, and took the motion and response under advisement. For the reasons stated below, the Court denies the creditor's motion for relief from stay and abandonment of collateral.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

The debtors filed their chapter 13 bankruptcy petition and plan on May 3, 2002. The Court entered its Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines on May 9, 2002, which stated that any objections to confirmation of the debtors' plan must be· filed on or before the tenth day after the meeting of creditors is concluded. According to the Court's docket report, the meeting of creditors was concluded on August 12, 2002. The parties stipulated that the debtors' plan provided that DeWitt Bank is a secured creditor secured solely by a mortgage that is a first mortgage on real property located in DeWitt, Arkansas. Under the plan, the debtors proposed to pay DeWitt Bank the value of the home, which the debtors set at $18,000.00. The debtors proposed to pay DeWitt Bank, through the

plan, $360.87 per month at the rate of 7.5% interest per annum. DeWitt Bank received timely notice of the filing of the chapter 13 plan and did not object to the plan. The debtors' plan was confirmed on August 28, 2002. On November 22, 2002, DeWitt Bank filed a proof of claim in the amount of $26,477.17 on its first mortgage loan secured by a lien on the real property.[1] The debtors did not object to DeWitt Bank's proof of claim.

The creditor's motion for relief from stay that is before the Court references three separate notes held by DeWitt Bank: (1) a note in the original amount of $8788.71 allegedly secured by a 1999 Polaris ATV and a 1999 Wolf Tanning bed,[2] (2) a note in the original amount of $60,367.80 allegedly secured with a first and second mortgage on real property located in DeWitt, Arkansas,[3] and (3) a note in the original amount of $2000.00 allegedly secured by a 1979 Ford truck.[4] At the hearing on March 30, 2004, DeWitt Bank did not present any evidence in support of its motion for relief from stay with regard to the three notes referenced above. In fact, the parties limited their argument to the one proof of claim that was not referenced in DeWitt Bank's motion for relief from stay. Accordingly, the Court must deny DeWitt Bank's motion for relief from stay as pled for failure to meet its burden of proof under 11 U.S.C. § 362(g).

The parties raised additional issues at the hearing and in their respective post-trial briefs that the Court will now address.[5] DeWitt Bank argued that the debtors' confirmed plan included a "prohibitive provision" in that the plan bifurcated DeWitt Bank's claim in the amount of $26,477.17 into a secured portion claim for $18,000.00 and an unsecured claim for the balance. According to DeWitt Bank, because the note was secured by a first residential mortgage on the debtors' principal residence, the debtors' could not modify DeWitt Bank's claim based on 11 U.S.C. § 1322(b)(2)[6] and *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In the alternative, DeWitt Bank argues that if the debtors are able to modify DeWitt Bank's claim under § 1322(c)(2),[7] as argued by the

---

1. Although this is the only proof of claim discussed by the parties at the hearing, this is only one of four proofs of claims filed by DeWitt Bank.

2. DeWitt Bank filed a proof of claim for this loan on November 22, 2002, and amended on January 6, 2004, in the amount of $1202.53.

3. DeWitt Bank filed a proof of claim for this loan on November 21, 2003, in the amount of $55,882.11.

4. DeWitt Bank filed a proof of claim for this loan on November 21, 2003, in the amount of $2417.25.

5. Federal Rule of Bankruptcy Procedure 7015(b), made applicable to this proceeding by the Court's specific direction under Federal Rule of Bankruptcy Procedure 9014(c), allows the Court to consider issues not raised by the pleadings ·when they are tried by the express or implied consent of the parties.

6. 11 U.S.C. § 1322(b)(2) states:

Subject to subsections (a) and (c) of this section, the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

7. 11 U.S.C. § 1322(c)(2) states:

Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

debtors, that only the payment term can be modified, not the value of the claim. *See Witt v. United Cos. Lending Corp. (In re Witt),* 113 F.3d 508 (4th Cir.1997).

The debtors' primary argument is based on § 1327(a), which provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor ...." Because the creditor received notice of the plan and its proposed confirmation and failed to object, the confirmed plan is res judicata as to the creditor's claim. In the alternative, the debtors argue that § 1322(c) allows the debtor to modify the rights of a secured claim holder on the debtors' principal residence when the final payment on the note is due before the final payment under the plan is due because § 1325(a)(5), which is referenced in § 1322(c), provides for the bifurcation of a claim under § 506(a).

The bankruptcy code sets out the effect of confirmation of a chapter 13 plan in § 1327:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327. According to a leading treatise on the subject, absent a timely appeal, a confirmed plan is res judicata and its terms are not subject to collateral attack. 8 Collier on Bankruptcy ¶ 1327.02.[1], at 1327–3 (15th ed. rev.)(2004).

The issue presented by this case is whether it is appropriate to apply the doctrine of res judicata when a plan that modifies a creditor's claim is confirmed without objection, yet the creditor's claim is deemed allowed in its unmodified state because no timely objections to the claim were filed. *Compare* 11 U.S.C. § 1327 ("The provisions of a confirmed plan bind the debtor and each creditor ....") *with* 11 U.S.C. § 502 ("A claim or interest ... is deemed allowed, unless a party in interest ... objects."). Many courts have declined to give preclusive effect to confirmed plans despite the plain language contained in § 1327.[8] However, as recognized by Judge Lundin, "[t]he issue is not, which procedure trumps another? The issue is, did the creditor have sufficient notice of the plan and opportunity to object such that confirmation has the effects described in § 1327(a), (b) and (c)?" Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Ed.* § 233.1, at 233–55 (2000 & Supp.2002). This Court agrees. As Judge Lundin explains,

Procedural due process can be satisfied in several ways without violating any fundamental principles of bankruptcy law. Describing in a Chapter 13 plan the treatment of a secured claim and determining the allowed amount of a secured claim for purposes of § 506(a) inevitably involve some of the same questions of fact and law. Valuation of collateral is often at the heart of both. There is no reason under the Bankruptcy Code or Rules why the overlapping

---

**8.** See *In re Ramey,* 301 B.R. 534 (Bankr. E.D.Ark.2003), for a compilation of many of these cases.

issues can't be decided in either context- during a hearing on confirmation of the plan or as part of a hearing before or after confirmation on an objection to a claim. If notice is adequate, the value of a secured claim holder's collateral can be determined on a motion in advance of confirmation under Bankruptcy Rule 3012, at the confirmation hearing as part of the trial of a contested plan, or at a hearing on an objection to the creditor's claim. The outcome of each of these procedures is the same for purposes of the effects of confirmation in § 1327—*if notice was adequate and the procedural due process rights of the secured claim holder are respected, a bankruptcy court order fixing the value of collateral, determining the allowed amount of a secured claim or defining what the secured claim holder will receive in satisfaction of its lien rights is binding on all parties without regard to the label on the process.*

*Id.* (emphasis added) (footnote omitted).

 The Court finds that if a creditor receives notice of a plan sufficient to satisfy the requirements of due process, with a sufficient description of the debtors' treatment of the creditor's lien under the plan, the principles of res judicata will control and the plan will be binding on all parties. In this case, the parties stipulated that DeWitt Bank received timely notice of the debtors' chapter 13 plan, which included a detailed treatment of DeWitt Bank's claim.[9] Accordingly, the plan is binding on the parties and, to the extent that DeWitt Bank's Motion For Relief From Stay and Abandonment of Collateral addresses this issue as presented by the parties, DeWitt Bank's motion is denied.

Finally, the parties argue in the alternative that § 1322(c) may or may not be applicable in this case. The Court is persuaded by the result reached by the Fourth Circuit in *Witt v. United Companies Lending Corp. (In re Witt),* 113 F.3d 508 (4th Cir.1997), which holds that § 1322(c) does not permit bifurcation of an undersecured loan into secured and unsecured claims if the only security for the loan is a lien on the debtor's principal residence. However, it cannot rule on this issue for two reasons. First, by finding that the doctrine of res judicata applies, the Court cannot and will not revisit the appropriateness of the debtor using § 1322(c) to cram down the value of their principle residence, in contravention of § 1322(b)(2). That is what the debtors proposed to do, and the creditor did not object to that treatment under the plan. Second, § 1322(c) requires the Court to consider the "original payment schedule" of the parties' contract. Neither side introduced the contract or the payment schedule at trial, and the parties did not stipulate that the last payment under the contract did, in fact, come due before the final payment under the plan is due.

The Court hereby denies DeWitt Bank's Motion For Relief From Stay and Abandonment of Collateral as stated in its pleading and as argued to the Court on March 30, 2004.

IT IS SO ORDERED.

---

**9.** There is no allegation of bad faith, fraud, or other basis under the bankruptcy code or rules for the Court to revisit the original confirmation order.