750 F.2d 1475
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon Gil CORREA, Rafael Antonio Emiliani-Gomez, Carlos
Alberto Valencia-Marin, Juan Fernando Olan-Mejia,
Carlos Canor, and Eladio Hoyos-Carrasco,
Defendants- Appellants.
 No. 83-5643.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 21, 1985.
 
 Robert L. Moore, Atty., Sharon L. Wolfe, Miami, Fla., for Marin, Mejia, Hoyos and Canor.
 Theodore J. Sakowitz, Federal Public Defender, Dennis G. Kainen, Asst. Federal Public Defender, Miami, Fla., for Emiliani-Gomez.
 James D. McMaster, Miami, Fla., for Gil Correa.
 Stanley Marcus, U.S. Atty., Linda Collins Hertz, Leonard F. Baer, David Lichter, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK*, Senior Circuit Judge.
 GODBOLD, Chief Judge:
 
 
 1
 On March 26, 1983, the United States Coast Guard Cutter HAMILTON sighted and approached the vessel ANNA I while on patrol on the high seas approximately 150 miles east of the Bahamas. Officers on board the HAMILTON requested permission to board ANNA I after noticing that the apparently freshly painted fishing vessel had very little fishing gear on board and what fishing gear there was appeared rusted and unused. Officers also noticed that the name ANNA I and the nationality PANAMA appeared to have been recently painted on the stern. Those on board the ANNA I denied the Coast Guard permission to board. The Coast Guard then contacted Panamanian officials and eventually obtained permission to board.
 
 
 2
 After some resistance from the crew of the ANNA I, Coast Guard officers boarded on March 27. In the boat's hold they found 509 bales of marijuana. The officers also discovered a registration certificate from Panama issued on March 1, 1983, which stated that the vessel previously was the American vessel, the MARY ANN O.
 
 
 3
 The officers subsequently learned that this fishing boat was first enrolled with the Coast Guard as a documented United States vessel in Florida in 1971 under the name MARY ANN O. The boat remained continuously enrolled with the Coast Guard as a documented vessel until July 31, 1980, when her document was surrendered to the Coast Guard in Florida and she went out of documentation. In December 1980 the original owner of the MARY ANN O sold her to another United States citizen. When she was sold all preferred ship's mortgages recorded against her had been satisfied. The new owner recorded the bill of sale with the Coast Guard and redocumented the boat in Delaware. The Coast Guard then issued to the vessel a permanent consolidated certificate of enrollment and license attesting that the MARY ANN O was enrolled and authorizing the vessel to be employed in the fishing industry for one year. Some time in early March of 1983 the MARY ANN O was sold to a Panamanian corporation and subsequently registered in Panama. The United States government never authorized or approved the sale to a foreign national. Moreover, the MARY ANN O, now the ANNA I, was never deleted from the roll of actively documented United States vessels.
 
 
 4
 The appellants were on board the ANNA I when the Coast Guard officers boarded her and discovered the marijuana. They were convicted under 21 U.S.C. Sec. 955a (1982), which makes it an offense to possess marijuana on board a United States vessel with intent to distribute.[1] We affirm the convictions.
 
 DISCUSSION
 
 5
 Appellants first contend that their convictions must be overturned because they were not "on board a vessel of the United States" as required by statute. A "vessel of the United States" is defined in part as meaning "any vessel documented under the laws of the United States." 21 U.S.C. Sec. 955b(c) (1982).[2] They assert that the ANNA I was not a documented vessel and therefore they could not be prosecuted under section 955a.[3]
 
 
 6
 The parties agree that the documentation of the ANNA I, previously the MARY ANN O, was rendered invalid by the sale of the vessel to a non-U.S. citizen. See 46 C.F.R. Sec. 67.23-9 (1983). They disagree as to the legal status of a vessel carrying invalid documentation. The appellants urge that under the facts of this case invalid documentation is synonymous with no documentation. They argue that the primary purpose of documentation is to signify nationality,[4] and since only vessels owned by U.S. citizens are eligible for documentation (in the United States), see 46 U.S.C. Sec. 65b (1982), the legal existence of documentation is inexorably tied to the vessel owner's continued status as a U.S. national. Transfer of that ownership to a non-U.S. citizen nullifies the vessel's United States documentation. The government contends that appellants' argument runs counter to both spirit and letter of statutory law. An invalid certificate of documentation may render its possessor liable for continued exercise of the privileges documentation grants, see 46 U.S.C. Secs. 65n, u (1982), but documentation continues until the certificate is surrendered to, and with the approval of, the appropriate authorities.
 
 
 7
 Whether invalid documentation is equivalent to the absence of documentation appears not to have been expressly resolved by either statute or caselaw. We find the government's position to be the better-reasoned view.
 
 
 8
 We look first to the Vessel Documentation Act, 46 U.S.C. Sec. 65, et seq. (1982), which defines "documented vessel" simply as a "vessel for which a certificate of documentation has been issued " (emphasis added).[5] The Act goes on to dictate the requirements and procedures for vessel documentation and the consequences and purposes of documentation.[6] It also prescribes penalties for the violation of any of its numerous strictures,[7] and provides for the imposition of civil penalties, see section 65u, and for forfeiture of the vessel. See sections 65m, n. The Act also directs that violations will render a certificate of documentation invalid and that such a certificate shall be surrendered to the appropriate authorities. See section 65o. Nowhere in the Vessel Documentation Act is automatic loss of documentation and status as a U.S. vessel mentioned as a consequence of violating the Act or any particular provision. It is conspicuous by its absence, particularly since the only subsection expressly concerning invalid documentation is silent on the point.[8] Automatic loss of documentation and status as a U.S. vessel is a fairly drastic consequence, since it severely restricts the government's authority to regulate the vessel and obligation to extend protections and privileges to that vessel. If Congress had intended such a result, the Vessel Documentation Act could have expressly so stated.
 
 
 9
 A conclusion that automatic loss of vessel documentation does not follow from a transfer of vessel ownership to a foreign national is bolstered by examining the regulations promulgated to implement the Documentation Act. See generally 46 C.F.R. Sec. 67.01, et seq. (1983). In particular, section 67.23-9 states that when a documented vessel is placed under foreign flag or transferred to a non-U.S. citizen, the certificate of documentation becomes invalid and subject to deletion from the roll of actively documented vessels. The section also requires that certificates subject to deletion be physically surrendered to a documentation officer. What these regulations suggest is that loss of documentation and status as a United States vessel is never automatic but requires an affirmative act by the vessel owner and a decision by the authorities to alter the boat's status as a documented vessel. The regulations are consistent with Congress's interest in establishing an "official basis for vessel identification and control." See H.R.Rep. No. 428, 96th Cong., 1st Sess. 4 (1979) (emphasis added).
 
 
 10
 That invalid documentation is not equivalent to no documentation is also suggested by other statutes under Title 46. Sections 808 and 831 of the Shipping Act describe the penalties for non-compliance with that statute's registration and licensing provisions. Automatic loss of documentation is not listed. Section 840 of the Shipping Act expressly states that a vessel is presumed to be documented until the vessel owner surrenders the certificate of documentation to the authorities. Section 911 of the Ship Mortgages Act echoes section 840.
 
 
 11
 Appellants point out that the cited provisions of the Shipping Act and the Ship Mortgages Act respond to specific concerns. Section 840 reflects a congressional concern that the United States fleet not be depleted during times of war or national emergency. Section 911 is designed to protect holders of mortgages and liens on vessels. Therefore, the appellants argue, a similar "presumption of documentation until surrender" cannot be inferred in the later-enacted and more general Vessel Documentation Act. This argument ignores the express congressional intent in enacting the Documentation Act, which was to have its terms and definitions (including "vessel of the United States") conform to the terms and definitions in other federal shipping statutes. See S.Rep. No. 855, 96th Cong., 2d Sess. 4 (1980). Moreover, the enactment of the Documentation Act involved a corresponding repeal of several long-standing statutes that expressly listed automatic loss of documentation and status as a U.S. vessel as a consequence of violating various registration and licensing provisions.[9] We conclude that Congress recognized a general governmental interest in retaining some control and regulatory power over vessels once they were documented and implicitly incorporated within section 65 the "presumption of documentation" expressly mentioned in sections 840 and 911.
 
 
 12
 That general governmental interest is particularly acute in the context of the present case. Appellants were convicted under 21 U.S.C. Sec. 955a (1983), which was enacted to maximize the Coast Guard's power to prevent the importation of illegal drugs. Courts have consistently upheld broad constructions of the statute in order to effectuate that purpose. See, e.g., U.S. v. Marino-Garcia, 679 F.2d 1373 (11th Cir.1982), cert. denied sub nom., Pauth-Arzuza v. U.S., 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983); U.S. v. Julio-Diaz, 678 F.2d 1031 (11th Cir.1982); U.S. v. Angola, 514 F.Supp. 933 (S.D.Fla.1981). Appellants' argument frustrates both the general interests reflected in the Vessel Documentation Act and the more narrow concern of 21 U.S.C. Sec. 955a (1982) when it, in effect, rewards those who violate (or who are parties to the violation of) the documentation provisions by placing those persons outside the reach of the criminal laws of the United States. Courts in this jurisdiction have implicitly sought to avoid such consequences. See U.S. v. Stuart-Caballero, 686 F.2d 890, 893 (11th Cir.1982) ("A ship so registered is a 'vessel of the United States' and retains that status until the documentation is surrendered with approval of the Secretary of Transportation.") (dicta), cert. denied, 459 U.S. 1209, 103 S.Ct. 1202, 75 L.Ed.2d 444 (1983); U.S. v. Bustos-Guzman, 685 F.2d 1278 (11th Cir.1982) (although vessel was held to be a U.S. vessel because it had several indicia of U.S. nationality, court found vessel to be still documented although the vessel was commanded by foreign national and had certificate of consolidated enrollment and license that was two years out of date incorrectly listing U.S. citizen as master); accord U.S. v. Newball, 524 F.Supp. 715 (E.D.N.Y.1981) (looking to 46 U.S.C. Sec. 911(4) (1982) as authority for holding that vessel retains its status as United States documented vessel under 21 U.S.C. Sec. 955b (1982) until document is surrendered). To effectuate the spirit and the letter of both 46 U.S.C. Sec. 65, et seq., (1982) and 21 U.S.C. Sec. 955a (1982), we find that an invalidly documented vessel does not lose its documentation absent some action by the vessel owner and the appropriate authorities. Because there was no such action in the instant case, we hold that the ANNA I is a "vessel documented under the laws of the United States."
 
 
 13
 The appellants next argue that even if the ANNA I is a documented vessel, she is still not a "vessel of the United States" under section 955b(c) because of that paragraph's final, modifying clause: "unless the vessel has been granted nationality by a foreign nation in accordance with article 5 of the Convention on the High Seas, 1958." Appellants contend that the clause modifies the entire definition of "vessel of the United States" and thus because Panama had granted nationality to the ANNA I, she was not, even if documented under U.S. law, a "vessel of the United States." The government asserts that the phrase qualifies only the final preceding clause concerning vessels owned by U.S. citizens and does not include vessels documented under U.S. law. Therefore, because the ANNA I was documented, the qualifier is inapplicable and she is a U.S. vessel.
 
 
 14
 Section 955b(c) is ambiguous and neither party's position is untenable. The construction that best reconciles the congressional intent in enacting section 955a with the international legal principles espoused in Article 5 of the Convention should be adopted. Cf. U.S. v. Cruz, 698 F.2d 1148 (11th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 391, 78 L.Ed.2d 335 (1983); U.S. v. Marino-Garcia, 679 F.2d 1373 (11th Cir.1982), cert. denied sub nom., Pauth-Arzuza v. U.S., 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983). Section 955a was enacted to give the government the maximum permissible jurisdiction to prevent the importation of illegal drugs into the United States. Both parties agree that Article 5 of the Convention on the High Seas reflects the treaty nations' adherence to the principle that every nation enjoys the autonomy to choose for itself the vessels to which it will grant nationality.
 
 
 15
 Appellants' construction of section 955b(c) does not best accommodate these two concerns. It restricts the government's authority to reach criminal conduct by limiting United States jurisdiction over all vessels documented in the United States (as well as those not documented) that are subsequently documented elsewhere. Moreover, appellants' construction conflicts with Article 5's concern for national autonomy and sovereignty because it allows a nation that later documents a vessel to restrict the consequences of the prior decision to document made by another nation.
 
 
 16
 The government's construction of the modifying clause in section 955b(c) accommodates potentially competing concerns by avoiding the problems created by the construction that appellants suggest. Limiting the qualifier to the final clause permits the maximum possible retention of jurisdiction in the United States by restraining the reach of section 955a only where the circumstances involve a vessel owned by a U.S. citizen that is not documented in the United States but is documented elsewhere. Such a limitation also comports with principles of international law since it respects the rights and prerogatives of the documenting nation over the vessel it documents, while never bringing into question the sovereign right of the United States to dictate its own conditions for documentation.[10]
 
 
 17
 We therefore hold that the modifying clause "unless the vessel has been granted nationality by a foreign nation" does not apply to the phrase "vessel documented under the laws of the United States." Because we hold that the ANNA I is a documented vessel, the modifier does not apply and thus she is a "vessel of the United States" under 21 U.S.C. Sec. 955b(c) (1982). And, since appellants (and the marijuana) were on board a vessel of the United States when they were arrested, they were subject to prosecution under 21 U.S.C. Sec. 955a (1982).
 
 
 18
 The government alleged and proved that appellants were on board a "vessel of the United States." We therefore reject appellants' final point that there was a material variance between indictment and proof. We do not need to address further appellants' argument that the ANNA I is a "vessel without nationality" because she was documented in two nations. For the purposes of domestic law, here 21 U.S.C. Secs. 955a, 955b (1982), ANNA I is a "vessel of the United States" and subject to the jurisdiction of the United States. What status she may have under international law or in other circumstances does not concern us here.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The statute reads in part:
 (a) It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.
 21 U.S.C. Sec. 955a(c) (1982).
 
 
 [2]
 The definition provides that:
 (c) '[v]essel of the United States' means any vessel documented under the laws of the United States, or numbered as provided by the Federal Boat Safety Act of 1971, as amended, or owned in whole or in part by the United States or a citizen of the United States, or a corporation created under the laws of the United States, or any State, Territory, District, Commonwealth, or possession thereof, unless the vessel has been granted nationality by a foreign nation in accordance with article 5 of the Convention on the High Seas, 1958.
 21 U.S.C. Sec. 955b(c) (1982).
 
 
 [3]
 Section 955a, however, alternatively reaches persons "on board a vessel subject to the jurisdiction of the United States." The phrase is defined at 21 U.S.C. Sec. 955b(d) (1983):
 (d) 'Vessel subject to the jurisdiction of the United States' includes a vessel without nationality or a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the Convention on the High Seas, 1958.
 Id.
 In their final claim appellants contend that since, at the most, the government established only this second basis for jurisdiction, there was a material variance between indictment and proof entitling appellants to a new trial. We reject this argument.
 
 
 [4]
 Signifying United States nationality is one purpose of vessel documentation. Documentation also:
 establishes an official basis for vessel identification and control. It serves to facilitate trade and commerce by classifying vessels for regulation, safety, pilotage, fee assessment, and taxation purposes. The maritime document of an American vessel is both a certificate of nationality and an authorization for the vessel's use in foreign, coastwise, or domestic trade.
 H.R.Rep. No. 428, 96th Cong., 1st Sess. 4 (1979).
 
 
 [5]
 The appellants note that the regulations define "documented vessel" to mean a "vessel for which a valid Certificate of Documentation is outstanding." 46 C.F.R. Sec. 67.01-1 (1983) (emphasis added). If, however, the regulation could only be interpreted as meaning that a vessel automatically loses its documentation when that documentation becomes invalid, we would be compelled to strike down the regulation's definition as overreaching and conflicting with the statutory definition. See Merchants National Bank of Mobile v. Ward Rig. No. 7, 634 F.2d 952 (5th Cir.1981) (invalidating old 46 C.F.R. Sec. 64.45-1 (1979) which stated that, pursuant to Ship Mortgages Act, vessel ceases to be vessel of United States until documented anew)
 We do not need to invalidate the regulation, because when construed in light of legislative history the definition does not conflict with the statute. It is prospective; that is, the regulation's definition provides for when the status of documented vessel is achieved and not when it is lost. A vessel is not documented until it possesses a valid certificate of documentation. See 46 Fed.Reg. 56,318 (1981) (notice of proposed rule-making).
 
 
 [6]
 Sections 65b-f, for example, provide the procedures to be followed and the requirements for eligibility that a vessel must satisfy for documentation. Sections 65h-l list the various types of fishing licenses for which documented vessels are eligible. Section 65m specifies the trade limitations of a licensed vessel
 
 
 [7]
 Failure to comply with any subsection of 46 U.S.C. Sec. 65 (1982) constitutes a violation of that statute and can subject the transgressor to liability
 
 
 [8]
 46 U.S.C. Sec. 65o (1982) provides:
 (a) A certificate of documentation is invalid if the vessel for which it is issued--
 (1) no longer meets the requirements of this Act and the regulations prescribed thereunder pertaining to that certificate of documentation; or
 (2) is placed under the command of a person who is not a citizen of the United States.
 (b) ... an invalid certificate of documentation shall be surrendered in accordance with regulations prescribed by the Secretary.
 
 
 [9]
 See 46 U.S.C. Secs. 38-40 (1976)
 
 
 [10]
 The government's limitation of the qualifier to the final clause also is consistent with the rule of statutory construction known as the "doctrine of the last antecedent": "qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote." Azure v. Morton, 514 F.2d 897, 900 (9th Cir.1975); see also First Charter Financial Corp. v. U.S., 669 F.2d 1342 (9th Cir.1982)
 Appellants suggest that an earlier draft of section 955b(c) more obviously supports the government's argument. That version stated that a "vessel of the United States" means:
 (1) a vessel documented under the laws of the United States, or numbered as provided by the Federal Boat Safety Act of 1971, as amended; or
 (2) unless it has been granted the nationality of a foreign nation in accordance with Article 5 of the 1958 Convention on the High Seas, a vessel owned by while or in part by:
 (A) the United States or a territory;
 (B) a State or political subdivision thereof;
 (C) a citizen of the United States; or
 (D) a corporation created under the laws of the United States or of any State.
 Hearings Before the Subcommittee on Coast Guard and Navigation of the Committee on Merchant Marine and Fisheries on H.R. 2538, 96th Cong. 1st Sess. 20 (1979).
 Therefore, because the structure of the final draft was changed, the appellants conclude, Congress must have also intended that the substantive meaning of the provision be changed. Appellants do not, however, point us to any language in the legislative history that supports their conclusion. It does not seem wise to assume that Congress intended such a dramatic alteration. Accord U.S. v. Stauffer Chemical Co., 684 F.2d 1174 (6th Cir.1982) (in construing statutes allowance must sometimes be made for human error and inadvertence in drafting legislation), aff'd, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).