[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-16353
_____

D. C. Docket No. 00-00212-CV-1-HL-4

In Re:     RICHARD W. PASCHEN,

Debtor.

_____

AMERICAN GENERAL FINANCE, INC.,

Plaintiff-Appellant,

versus

RICHARD W. PASCHEN,
DOREEN A. PASCHEN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

**(July 10, 2002)**

Before WILSON, HILL and ALARCON*, Circuit Judges.

WILSON, Circuit Judge:

_____

*Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

This case presents an issue of first impression in this Circuit: Does 11 U.S.C. § 1322(c)(2) permit Chapter 13 debtors to bifurcate undersecured, short-term[1] home mortgages into secured and unsecured claims, with the unsecured claim subject to "cramdown" pursuant to 11 U.S.C. § 1325(a)(5)? The bankruptcy court, in confirming Richard and Doreen Paschen's (Debtors') Chapter 13 plan, held that § 1322(c)(2) did indeed permit Debtors to modify undersecured, short-term home mortgages through bifurcation and "cramdown." The district court affirmed the bankruptcy court's confirmation of Debtors' Chapter 13 plan. For the foregoing reasons, we affirm.

I.

Debtors purchased a home in Columbus, Georgia in May of 1997. Two years later, Debtors encountered serious financial difficulties. Needing an immediate infusion of cash to pay off their debts, Debtors sought to borrow money from American General Finance, Inc. (AGF), a financial services corporation with a specialty in consumer finance. In August of 1999 AGF approved a loan to Debtors for $12,377.08, secured by the equity Debtors held in their home.

---

[1] The short-term mortgages covered by the statute are those in which "the last payment on the original payment schedule . . . is due before the date on which the final payment under the [Chapter 13] plan is due." 11 U.S.C. § 1322(c)(2).

In December of 1999 Debtors' financial situation became untenable, and they filed for protection from their creditors under Chapter 13. AGF filed a proof of claim with the bankruptcy court in the amount of $11,392. Debtors then submitted a Chapter 13 plan, which proposed modifying AGF's claim by bifurcating AGF's loan into its secured and unsecured components, with only the secured portion to be paid back in a series of monthly installments. Debtors valued the secured component at $2752, which Debtors claimed reflected the actual amount of equity they then held in their home.

AGF filed a motion to deny confirmation of the plan, arguing that the plan failed to assess the value of AGF's secured debt properly. AGF further contended that the applicable law prevented Debtors from bifurcating AGF's loan into secured and unsecured parts and cramming down the unsecured part, as AGF's lien was secured by an interest in Debtors' primary residence. Such loans, AGF argued, are excepted from the general rule permitting modification of secured claims pursuant to a Chapter 13 plan. *See id.* § 1322(b)(2).

In a written opinion dated August 10, 2000, the United States Bankruptcy Court for the Middle District of Georgia rejected AGF's legal argument that claims involving short-term loans secured by liens against a debtor's primary residence could not be bifurcated into secured and unsecured parts, with the unsecured part crammed

down, in a Chapter 13 proceeding. The court found that § 1322(c)(2) explicitly permitted the bifurcation and "cramdown" of claims involving short-term mortgages such as the one at issue in this case. The August 10th opinion was incorporated into the court's ultimate findings of fact and conclusions of law, which, pursuant to Bankruptcy Rule 7052, were announced from the bench after a confirmation hearing on August 25, 2000. The court confirmed a modified version of Debtors' Chapter 13 plan, which valued AGF's lien at six thousand dollars and required debtors to repay that amount at twelve percent interest over a sixty-month period.

AGF appealed the bankruptcy court's confirmation of Debtors' plan to the United States District Court for the Middle District of Georgia, which rejected AGF's arguments and affirmed the bankruptcy court's decision. AGF filed a timely notice of appeal with this Court.

II.

We review both the bankruptcy court's and the district court's factual findings under the clearly erroneous standard. *Gen. Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir. 1997). The legal determinations of both of these courts are subject to de novo review.[2] *Id.*

---

[2]While the bulk of this opinion is dedicated to AGF's legal claim that the lower courts erred in construing § 1322(c)(2), AGF also contends that the bankruptcy court's confirmation ruling "is based on a misapplication of several basic principles of contract law." These errors are alleged to have caused the court to value AGF's lien improperly. After reviewing and

Chapter 13 debtors enjoy "broad power to modify the rights of the holders of secured claims." *In re Eubanks*, 219 B.R. 468, 470 (B.A.P. 6th Cir. 1998). The manner in which secured claims may be modified in an acceptable Chapter 13 plan is governed by § 1325(a)(5). Section 1325(a)(5) specifies the conditions under which Chapter 13 plans must address "allowed secured claim[s]" if the plans are to be confirmed, essentially by ensuring that creditors receive appropriate value for each of their secured claims. The phrase "allowed secured claim[s]" is a reference to 11 U.S.C. § 506(a), which has been interpreted as providing that "a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238–39 (1989). Thus, taken together, these provisions permit the bifurcation of an undersecured claim into its secured and unsecured parts, with creditors only assured of receiving full value for the secured portion of the claim. Section 1325(a)(5) is recognized as the source of a Chapter 13 debtor's authority to bifurcate secured claims and to "strip down" the value of the claim to an amount equal to the value of the collateral. *In re Young*, 199 B.R. 643, 647 (Bankr. E.D. Tenn. 1996) ("The very essence of a § 1325(a)(5) modification is the

considering the briefs, the record, and the applicable law, we find AGF's contention to be without merit.

write down or 'cramdown' of a secured claim to the value of the collateral securing the debt.").

In the instant case, Debtors' proposed plan included an assertion that AGF's debt was undersecured, because the value of Debtors' collateral (equity in their home) was substantially exceeded by the value of the debt. Relying upon the provisions of § 1325(a)(5), Debtors sought to bifurcate AGF's claim, with the secured portion paid back in monthly installments and the unsecured component crammed down. While the bankruptcy court disagreed with Debtors' valuation of AGF's collateral, it agreed with the premise of Debtors' proposal and permitted AGF's claim to be bifurcated, with only the value of the secured portion returned to AGF.

AGF argues that another provision of the Bankruptcy Code precludes the modification of its claim. According to AGF, § 1322(b)(2) expressly prohibits the modification of any claim in a Chapter 13 proceeding "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The Supreme Court has interpreted this provision to exclude mortgages against a debtor's principal residence from the general rule permitting modification of secured claims in Chapter 13 proceedings. *Nobelman v. Am. Savings Bank*, 508 U.S. 324, 331–32 (1993), *superseded by statute as stated in In*

*re Escue*, 184 B.R. 287 (Bankr. M.D. Tenn. 1995). In the instant case, AGF holds

a note secured solely by a lien on the real property that constitutes Debtors'

principal residence. Hence, AGF contends that its claim cannot be modified

pursuant to § 1325(a)(5).

Debtors rely upon what they term "an exception to the section 1322(b)(2)

exception" to support their contention that AGF's claim should be subject to

modification. The relevant provision is found at § 1322(c)(2), which provides as

follows:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law–
> . . . .
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). Debtors contend that this provision unambiguously

provides that short-term mortgages that mature prior to the final payment on a

Chapter 13 plan are subject to modification, notwithstanding the general

prohibition on modification of claims secured by an interest in a debtor's primary

residence found in § 1322(b)(2). Debtors note that the debt at issue here is a short-

term mortgage that matures prior to the completion of the proposed Chapter 13

plan and thus argue that their debt to AGF is subject to modification. AGF rejects

this reading of § 1322(c)(2); argues that the language of § 1322(c)(2) is ambiguous; and avers that the legislative history indicates that Congress did not intend for § 1322(c)(2) to permit the modification of claims secured by short-term mortgages, but rather intended to permit only the schedule of payments for those claims to be modified. Our task in this case is to evaluate these competing views of § 1322(c)(2) to determine which view best effects the will of Congress.

III.

"In construing a statute we must begin, and often should end as well, with the language of the statute itself." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (internal quotation marks omitted). When the language of a statute is unambiguous, we need go no further, because we must presume that Congress "said what it meant and meant what it said." *Id*. "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair Enters., Inc*., 489 U.S. at 242 (alteration in original) (internal quotation marks omitted). The import of these authorities is that we need not resort to extrinsic evidence, such as legislative history, to discern a statute's meaning if the statute's language is unambiguous.

In the instant case, the plain language of the statute indicates a clear congressional intent to except certain short-term mortgages from the general rule prohibiting the modification of claims secured only by an interest in a debtor's primary residence in a Chapter 13 proceeding. Debtors' interpretation of the statute is the correct one. An assessment of the text of § 1322(c)(2) reflects its clarity.

The prefatory phrase "[n]otwithstanding subsection (b)(2)" is the first important indicator of congressional intent with respect to this statute. The phrase is a plain statement that subsection (b)(2)'s prohibition on the modification of loans secured only by an interest in a debtor's primary residence does not have any application to the class of claims that fall under § 1322(c)(2). This interpretation of the "[n]otwithstanding" phrase has been noted by a number of other courts charged with construing § 1322(c)(2). *See, e.g.*, *In re Eubanks*, 219 B.R. at 470 ("The introductory phrase, '[n]otwithstanding subsection (b)(2)' clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section") (alteration in original) (internal quotation marks omitted).); *In re Bagne*, 219 B.R. 272, 277 (Bankr. E.D. Cal. 1998) ("Plainly, this [prefatory] language instructs the court to disregard § 1322(b)(2)."); *In re Mattson*, 210 B.R. 157, 160 (Bankr. D. Minn. 1997) (holding

that the prefatory phrase meant that "[w]e are therefore to ignore subsection (b)(2), at least to the extent that it is inconsistent with the language that follows").

In addition, the reference to § 1325(a)(5) is highly relevant to our understanding of § 1322(c)(2). As we noted earlier, § 1325(a)(5) permits writing down secured claims to the value of the collateral securing the debt. *See United States v. Arnold*, 878 F.2d 925, 928 (6th Cir. 1989) ("Under [§ 1325(a)(5)], the debtor can 'cramdown' a plan repaying only the 'allowed secured claim' . . . ."); *In re Young*, 199 B.R. at 647 ("The very essence of a § 1325(a)(5) modification is the write down or 'cramdown' of a secured claim to the value of the collateral securing the debt."). The phrase "payment of the claim as modified pursuant to section 1325(a)(5)" is an explicit statement of § 1322(c)(2)'s purpose: claims that fall within its ambit are subject to bifurcation into secured and unsecured parts, with the unsecured portion subject to "cramdown" pursuant to § 1325(a)(5). *In re Eubanks*, 219 B.R. at 471–72. And the claims that fall under § 1322(c)(2) are those in which "the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due" – precisely the kind of claim at issue in this case.

AGF argues that the language of the statute is subject to more than one plausible interpretation and is thus ambiguous, requiring reference to extrinsic sources to discern congressional intent. AGF relies upon the construction of § 1322(c)(2) advanced in *In re Witt*, 113 F.3d 508 (4th Cir. 1997), to support its argument that the statute is ambiguous.

In *In re Witt*, the Fourth Circuit found § 1322(c)(2)'s critical phrase "payment of the claim as modified" ambiguous, because "[i]t [could not] be determined, merely from the statute's text, whether the words 'as modified' should apply to 'payment' or to 'claim.'" *Id*. at 511. If the term "as modified" modifies "payment," the *Witt* court found that a mortgage covered by § 1322(c)(2) could not be bifurcated and crammed down – rather, § 1322(c)(2) merely could provide for the modification of the schedule of payments made on such a claim. *Id*. The Fourth Circuit held that it was in fact a plausible reading of the statute to assume that the phrase "as modified" modifies "payment," rather than "claim." *Id*. The court stated that because the subject of "payment" was the focus of § 1322(c)(2), it is likely, "as a matter of common sense," that the modifier "as modified" was a reference to the central subject of the statute. *Id*. The court further noted that the phrase "payment" would be superfluous if the contrary reading of the statute were accepted; the court reasoned that if Congress had intended the phrase "as

11

modified" to refer to "claim," there would have been no reason to include the term "payment" in the statute. *Id*. at 512. Congress simply could have stated that "the plan may provide for the claim to be modified" if this were its intended reading. *Id.* (internal quotation marks omitted).

After finding this alternative construction of § 1322(c)(2) one, though not necessarily the only, plausible reading of congressional intent, the *Witt* court assessed the statute's legislative history in an effort to gauge Congress's intent in the face of an ambiguous statute. The Fourth Circuit's reading of that history led the court to conclude that § 1322(c)(2) does not provide for the bifurcation and "cramdown" of undersecured, short-term home mortgages.[3] *Id*. at 513–14. AGF urges us to adopt the Fourth Circuit's analysis in construing § 1322(c)(2).

We are not convinced by our sister circuit's reasoning. The *Witt* court's view that the phrase "as modified" modifies "payment," rather than "claim," is a grammatically strained reading of the statute. It contradicts the rule of the last antecedent,[4] an accepted canon of statutory construction which provides that when

---

[3] While we need not address the legislative history of this statute, as we find its plain language unambiguous, it should be noted that other courts that have assessed § 1322(c)(2)'s legislative history have come to conclusions that differ from those of the *Witt* court. *See, e.g.*, *In re Eubanks*, 219 B.R. at 473–78; *In re Mattson*, 210 B.R. at 160–61.

[4] The *Witt* court acknowledged that its construction of the statute was contrary to the rule of the last antecedent, but noted that use of such a rule was "not compelled." 113 F.3d at 511 (internal quotation marks omitted). The court's assessment of the context in which the modifier was used led it to conclude that the rule of the last antecedent was not conclusive in this instance.

construing statutes, "qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote." *United States v. Correa*, 750 F.2d 1475, 1481 n.10 (11th Cir. 1985) (internal quotation marks omitted). Amicus Curiae points out that had Congress intended for the phrase "as modified" to modify "payment," it could have done so by placing the modifier next to the phrase to be modified, such as through "payments as modified on the claim," or "modified payments on the claim." *Br. of Amicus Curiae Nat'l Ass'n of Consumer Bankr. Att'ys in support of Debtors-Appellees* at 13.

Additionally, the *Witt* court advances no convincing explanation for the meaning of the reference to § 1325(a)(5) in the text of § 1322(c)(2). As we have noted, § 1325(a)(5) is the provision that permits the bifurcation of undersecured claims into secured and unsecured components, with the unsecured component subject to "cramdown." "Payments" cannot be modified pursuant to § 1325(a)(5); only *claims* are subject to § 1325(a)(5)'s modification provisions. The reference to § 1325(a)(5) could not be a plainer statement of the statute's purpose; it is an exception to the general rule preventing the modification of claims secured by

---

While the rule of the last antecedent is hardly a mandatory rule of statutory construction, we disagree with the *Witt* court that a compelling reason to reject it exists in this instance.

home mortgages. *See In re Mattson*, 210 B.R. at 160 ("[I]n certain limited circumstances which obtain [in § 1322(c)(2)], the debtor may in fact utilize the provisions of § 1325(a)(5) to cram down on the secured creditor . . . .").

We note that the great weight of persuasive authority supports debtors' interpretation of § 1322(c)(2); *In re Witt* appears to be the only case interpreting the statute differently. *See, e.g.*, *In re Eubanks*, 219 B.R. at 472; *In re Sexton*, 230 B.R. 346, 349 (Bankr. E.D. Tenn. 1999); *In re Reeves*, 221 B.R. 756, 759 (Bankr. C.D. Ill. 1998); *In re Mattson*, 210 B.R. at 160; *see also Collier on Bankruptcy* § 1322.16, at 1322-51 (Lawrence P. King et al. eds., rev. 15th ed. 2001). Indeed, we have noted in dicta that § 1322(c)(2) was intended "to except short-term and balloon mortgages from [ § 1322(b)(2)'s] reach, thereby overruling *Nobelman* insofar as it applied to [those] types of mortgages." *In re Tanner*, 217 F.3d 1357, 1358 n.5 (11th Cir. 2000). The plain language of § 1322(c)(2) compels us to agree with the consensus of those courts that have considered the provision; § 1322(c)(2) permits the modification of claims (through bifurcation and "cramdown") secured by those short-term home mortgages that mature prior to the completion of a debtor's Chapter 13 plan.

IV.

14

In conclusion, we find that the bankruptcy court's interpretation of § 1322(c)(2) is the correct one. The provision plainly permits the modification of AGF's claim through the bifurcation of that claim into secured and unsecured components, with the unsecured component crammed down pursuant to § 1325(a)(5). The bankruptcy court did not err in confirming Debtors' plan, based upon such a construction of § 1322(c)(2), and the district court correctly affirmed the bankruptcy court's decision. The decision of the district court is AFFIRMED.