**IN RE: Don Michael VARNER, Sr. and Patti Marie Koontz Varner, Debtors.**

**Case No. 14–51410**

United States Bankruptcy Court, M.D. North Carolina, **Winston–Salem Division.**

Signed May 1, 2015

Thomas W. Anderson, Pilot Mountain, NC, for Debtors.

## ORDER

CATHARINE R. ARON, UNITED STATES BANKRUPTCY JUDGE

THIS MATTER came on for hearing on April 1, 2015, in Winston–Salem, North Carolina upon the objection by the Chapter 13 Trustee (the "Trustee") to confirmation of the plan. Thomas Anderson appeared on behalf of Don and Patti Varner (the "Debtors"), and Kathryn Bringle appeared on behalf of the Trustee. After considering the documents on the record and the arguments of counsel, the Court concludes that the Trustee's objection to the Debtor's plan should be sustained.

### Background

The Debtors own real property in Pilot Mountain, North Carolina, that serves as their primary residence. In 2003 the Debtors executed a note, secured by a deed of trust, to CitiFinancial Mortgage ("CitiFinancial") with a variable interest rate of 9.75%. On December 30, 2014, the Debtors filed for relief under Chapter 13 of Title 11. CitiFinancial filed a proof of claim purporting to have a secured claim of $42,087.68 with an annual interest rate of 9.08%. According to the documents attached to their proof of claim, the note will mature in approximately August 2018.

The Debtors' proposed plan seeks to modify CitiFinancial's interest rate. In the Debtor's proposed plan CitiFinancial will be paid in full as a secured claim over the life of the plan, which is estimated to last at least three years. Rather than the 9.08% interest rate listed in its proof of claim, the Debtor's propose to pay CitiFinancial at a rate of 5.25%. The Trustee filed an objection to confirmation of the Debtor's plan, seeking guidance from the Court as to the appropriate interest rate for CitiFinancial's claim for plan purposes.

### Discussion

The ability of a debtor to modify secured claims in Chapter 13 is limited. A debtor's Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). However, under § 1322(c)(2), a security interest in a debtor's principal residence can in fact be modified if "the last payment on the original payment schedule ... is due before the date on which the final payment under the plan is due." In other words, § 1322(c)(2) allows secured claims to be modified, notwithstanding § 1322(b)(2), if the claim matured pre-petition or will mature during the life of the plan. *See In re McNeill*, 2006 WL 1314333, at \*3 (Bankr. M.D.N.C. May 12, 2006) ("There is no distinction made in the statute between curing a default on a loan that matures post-petition, but prior to completion of the plan, and a loan that matures pre-petition."). In such instances, "the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5)." 11 U.S.C. § 1322(c)(2).

The Fourth Circuit has previously interpreted the language in § 1322(c)(2). In *In re Witt*, the debtors proposed a Chapter 13 plan to bifurcate a secured creditor's claim, which was secured by their primary residence, into a secured and unsecured claim. 113 F.3d 508, 510 (1997). This proposed

plan was made after the Supreme Court ruled in *Nobelman v. Am. Savs.* Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), that § 506(a) does not allow for the bifurcation of a debt that secures a debtor's primary residence. The debtors acknowledged that their plan was similar to the plan rejected by *Nobelman,* but argued that the Bankruptcy Reform Act of 1994, which amended § 1322(c) to include its present language, allowed them to modify a secured creditor's claim by bifurcation. *Witt,* 113 F.3d at 510–11. The issue before the Fourth Circuit was whether the addition of § 1322(c)(2) overruled *Nobelman* and allowed for bifurcation.

The Fourth Circuit ultimately disagreed with the debtors' argument. The key phrase in § 1322(c)(2), "the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5)," was determined to be ambiguous in what the statute specifically permitted: modification of the payment or the claim itself. *Id.* at 511. Viewing the purpose of § 1322(c)(2) as addressing plan payments, the Fourth Circuit interpreted "claim" to be a part of the phrase "payment of the claim" such that the provision authorized the modification of payments and not the claim itself. *Id.* Additionally, the Fourth Circuit drew support from the legislative history of § 1322(c)(2), which made no mention of *Nobelman* or Congress's intention to overrule it. *Id.* at 513. After interpreting § 1322(c)(2) to only allow for the modification of payments, the Fourth Circuit ruled that a debtor may not bifurcate a secured debt for a lien on a debtor's principal residence. *Id.* at 513–14.

The reaction to *Witt* outside of the Fourth Circuit was uniformly critical. The Eleventh Circuit rejected *Witt's* analysis, calling it "a grammatically strained reading of the statute ... [which] contradicts the rule of the last antecedent." *Am. Gen.*

*Fin., Inc. v. Paschen (In re Paschen),* 296 F.3d 1203, 1208–09 (11th Cir.2002). *See also* 8 Collier on Bankruptcy ¶ 1322.17 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing favorably *Paschen* and calling *Witt's* reading of § 1322(c)(2) "strained"). Another court found that "the *Witt* court's reading of § 1322(c) makes nonsense of the cross reference to § 1325(a) ..." *First Union Mortg. Corp. v. Eubanks (In re Eubanks),* 219 B.R. 468, 473 (6th Cir. BAP 1998).

The reaction to *Witt* by lower courts within the Fourth Circuit was equally critical. In *In re Hubbell,* a secured creditor objected to a Chapter 13 plan confirmation and cited *Witt* for the proposition that the plan could not modify the contractual interest rate of its claim. 496 B.R. 784 (Bankr.E.D.N.C.2013). The *Hubbell* court confined *Witt* by noting criticism of the decision by other courts and by limiting its holding "that Section 1322(c)(2) did not overrule *Nobelman." Id.* at 791–92 (quoting *Nat'l Mortg. Ass'n v. Griffin (In re Griffin),* 489 B.R. 638, 642–43 (Bankr. D.Md.2013)). If *Witt* is understood in this narrow manner, then the modification of a secured creditor's interest rate under § 1322(c)(2) is permissible as a mere "restructuring [of] the interest rate and other payment terms." *Hubbell,* 496 B.R. at 792. Additionally, as *Hubbell* itself points out, there are other courts who have allowed the modification of interest rates post-*Witt. See Griffin,* 489 B.R. at 644 (stating the court would conduct an evidentiary hearing if the parties did not agree on an interest rate); *In re Farooq,* 2010 WL 348039, at *2 (Bankr.E.D.Va. Jan. 29, 2010) ("The rate of interest need not be the contract rate ... although the claim cannot be bifurcated into secured and unsecured components, it can be reamortized"); *In re Joyner,* 2008 WL 4346467, at *2 (Bankr.E.D.N.C. Sep. 17, 2008) ("[A]n exception to this anti-modification provi-

sion allows the debtor to reamortize her entire secured claim ... As a result, the debt can be restructured under § 1322(c)(2) of the Code, at an interest rate more favorable to the debtor than the rate on the original note.").

After considering the Fourth Circuit's interpretation of § 1322(c)(2) in *Witt* and the *Hubbell* court's analysis, this Court cannot escape the conclusion that *Witt* is determinative. The *Witt* court was asked to determine if the newly created § 1322(c)(2) overruled *Nobelman* and allowed for the bifurcation of a secured debt for a debtor's primary residence. Strictly speaking, the issue before this Court concerns neither the impact of *Nobelman* nor the bifurcation of a secured debt. However, the basis for the Fourth Circuit's holding was that § 1322(c)(2) prevented courts from modifying a secured creditor's claim. Limiting *Witt* to its holding and forsaking its reasoning takes away the ground on which it stands. Insofar as *Witt* has not been overruled, this Court is bound by its reasoning.

The distinction in *Witt* between a payment and a claim must be meaningful. According to *Witt*, § 1322(c)(2) creates a distinction between the payment of a secured creditor's claim and the claim itself such that a debtor can modify the former but not the latter. This distinction in *Witt* is further supported by § 1322(b)(2) which provides the general rule that a debtor's Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The general prohibition against modifying a secured creditor's claim in § 1322(b)(2) has a limited exception in § 1322(c)(2), which, according to *Witt*, allows for modification only as to payments of the claim. Thus, any attempt to modify a secured creditor's

claim for a debtor's principal residence, except for making payments, must obtain statutory support elsewhere than from § 1322(c)(2). In order for this division between a payment and a claim to have any meaning, however, it must be determined what constitutes a claim such that it is a distinct concept from payments of a claim.

■ A claim is a broad term of art that includes a mortgage creditor's contractual interest. A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Parties who intend to participate in a debtor's bankruptcy may file a proof of claim. 11 U.S.C. § 501(a). A creditor who files a proof of claim in an individual debtor's case is required to include "an itemized statement of the interest, fees, expenses, or charges," to the extent that each exists, "in addition to its principal amount." Fed. R. Bankr.P. 3001(c)(2)(A). If a creditor is required to include both the principal and interest owed as part of its proof of claim, then its claim would seem to encapsulate both principal and interest. Interest certainly fits into the definition of "claim" in that the creditor has a "right to payment" that is "unmatured." 11 U.S.C. § 101(5)(A). Furthermore, "Congress intended ... to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). A creditor's "right to payment" is therefore more than just the principal owed but also includes interest.

■ Applying the broad definition of "claim" to include the interest owed to a creditor, § 1322(c)(2) does not allow a debtor to modify a secured creditor's contractual interest rate. According to *Witt*,

§ 1322(c)(2) does not allow a Chapter 13 plan to modify a creditor's claim when it is for the debtor's principal residence. If a creditor's claim includes the interest owed, then § 1322(c)(2) does not allow for the modification of the interest rate. To comply with § 1322(c)(2), a Chapter 13 plan may modify the payments to a mortgage creditor, such as stretching payments out over the life of the plan, but it cannot modify the contractual interest rate, absent some other statutory basis.

Courts that interpret § 1322(c)(2) to allow for the modification of a mortgage creditor's interest rate are not persuasive. While many courts have allowed for the modification of a creditor's interest rate, the *Hubbell* court gave the most robust defense of its ruling. Despite its reasoned approach, the *Hubbell* court is not persuasive for several reasons. First, the *Hubbell* court relies on decisions from outside the Fourth Circuit to interpret § 1322(c)(2). 496 B.R. at 789 (citing *In re Golash*, 428 B.R. 189, 191 (Bankr.W.D.Pa. 2010); *In re Ibarra*, 235 B.R. 204, 212 (Bankr.D.P.R.1999)). These decisions have no bearing on contrary precedent from the Fourth Circuit.

Second, the *Hubbell* court cites to other courts within the Fourth Circuit that have allowed for the modification of a mortgage creditor's interest rate, but these courts contain no significant analysis of *Will*. For example, the issue before the *Griffin* court was whether "payment terms under a reverse mortgage secured by a principal residence can be modified under a Chapter 13 plan" even though the loan had already matured pre-petition. 489 B.R. at 640–41. The focus of the *Griffin* court was squarely on whether § 1322(c)(2) even applied rather than how it applied to the creditor's interest rate. While the court assumed that it could modify the interest rate, it never actually modified it. *Id.* at 644

("[T]he parties should work out a compromise on that issue, and failing that, the Court would hold an evidentiary hearing to resolve the matter. Accordingly, if the interest rate is not resolved by consent, the Court will hold an evidentiary hearing on the same."). The *Hubbell* court relies on other decisions in which *Witt* is not even referenced. *See, e.g. In re Joyner*, 2008 WL 4346467 (Bankr.E.D.N.C. Sep. 17, 2008); *In re Crickmore*, No. 07–01350 (Bankr.E.D.N.C. Aug. 29, 2007). Therefore, these other decisions within the Fourth Circuit are not persuasive.

Third, the *Hubbell* court's interpretation of § 1322(c)(2) does not provide for a meaningful distinction between payments and a claim. The *Hubbell* court understood *Witt* as "allowing modification of the *payment terms* of a mortgage claim." *Hubbell*, 496 B.R. at 792 n. 8 (emphasis added). This interpretation of *Witt* led the court to say that the Fourth Circuit's decision does not "prevent the debtor from restructuring the interest rate and other payment terms on certain mortgage claims under § 1322(c)(2)." *Id.* at 791. By including a creditor's interest rate within the statutorily absent phrase "payment terms," the *Hubbell* court uncoupled the contractual interest that is wholly a part of a creditor's claim. This artificial separation does not have any meaningful basis and is contrary to *Witt*'s prohibition against modifying a secured creditor's claim.

Fourth, the *Hubbell* court seemed to be persuaded by the general criticism directed at *Witt* by other courts outside the Fourth Circuit. 496 B.R. at 792 n. 9 (citing *Am. Gen. Fin., Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203, 1208–09 (11th Cir.2002); *First Union Mortg. Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 473 (6th Cir. BAP 1998)). This Court notes the contrary holdings of other

courts, but unless and until the Fourth Circuit overrules *Witt* it is bound to apply its precedent.

 Turning to the present case, the Debtors' plan cannot be confirmed. CitiFinancial filed a proof of claim that included an interest rate of 9.08%. No party has filed an objection to CitiFinancial's claim, and so it is deemed allowed under § 502(a). The Debtors' current plan proposes to modify CitiFinancial's claim by lowering the interest rate to 5.25%, which violates § 1322(b)(2). Despite the Debtors' argument to the contrary, the exception to § 1322(b)(2) found in § 1322(c)(2) does not allow them to modify the interest rate of Citifinancial's claim. Therefore, because the Debtors propose to modify CitiFinancial's claim that is secured by the debtor's principal residence, the plan cannot be confirmed.

### Conclusion

Based on the foregoing the Court concludes that the objection by the Trustee is sustained and confirmation is DENIED. It is further ordered that the Debtors will have a period of thirty (30) days from the entry of this Order to file a new plan with the Court.

**SO ORDERED.**